UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NIDAL OTHMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.4:09CV1730MLM |
| ) | |
| CITY OF COUNTRY CLUB HILLS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant City of Country Club Hills ("Defendant" or the "City of Country Club Hills"). Doc. 16. Plaintiff Nidal Othman ("Plaintiff") has filed a Response. Doc. 27. Defendant has filed a Reply. Doc. 33. Also before the court is Defendant's Motion to Strike the Affidavit of Kevin Burgdorf. Doc. 32. Plaintiff has opposed Defendant's Motion to Strike. Doc. 34. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 5.

## I.
## MOTION TO STRIKE

Plaintiff moves to strike the affidavit of Kevin Burgdorf, which affidavit Plaintiff has offered in response to Defendant's Motion for Summary Judgment. In support of this Motion Defendant contends that this affidavit does not comport with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. First, the court is aware of the requirements of Rule 56(e) and will consider the factual allegations of Burgdorf's affidavit accordingly. In particular, the court will not consider statements made in the Burgdorf affidavit which are mere recitations of matters related to him by others or which are recitations of Burgdorf's opinion. Second, to the extent that Defendant has

denied the veracity of statements made in the Burgdorf affidavit, the court will deem the statements disputed. As such, the court will deny Defendant's Motion, in part, and grant it, in part.

## III.
## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function

is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendant's Motion.

## III.
## UNDISPUTED FACTS[1]

Plaintiff alleges, in Count I of his Complaint, that Defendant failed to hire him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., in that, while he was working as a part time police officer, Defendant passed over him, on two occasions, for a full time police officer position based on his national origin, which is Jordanian. In Count II, Plaintiff contends that Defendant retaliated against him in violation of Title VII, in that Plaintiff complained to the Defendant's Chief of Police about his alleged mistreatment by a supervisor, Captain Adler, and that Defendant retaliated against him for doing so by not selecting him for two open full time police officer positions. In Count III, Plaintiff alleges post-employment retaliation pursuant to Title VII, in that Defendant's representatives and employees spoke poorly of Plaintiff to employees of the City of Pine Lawn.

Plaintiff graduated from the Police Academy in June 2005. He worked for the Northwoods Police Department from January 2005 to December 2007. Plaintiff worked for Defendant as a part time police officer from February 4, 2008, to January 15, 2009. Clifton Ware was the Chief of Police for Defendant while Plaintiff was employed by Defendant as a part time police officer. Chief Ware was aware that Plaintiff was born in Jordan prior to Plaintiff's being hired by Defendant as a part time police officer. Chief Ware recommended that Plaintiff be hired as a part time police officer to the

---

[1] The facts are undisputed unless otherwise stated.

Mayor and Board of Alderman of the City of Country Club Hills. Defendant contends that Plaintiff told Chief Ware, prior to his being hired for the part time position, that it was difficult for him to work on the midnight shift because he owned two gas stations. Plaintiff contends that he told Chief Ware that he would prefer not to work midnights but that it would not be a problem if he worked midnights. In Plaintiff's Background Investigation Report, dated January 9, 2008, Captain Michael Adler reported to chief Ware that Plaintiff was born in Jordan; that he immigrated to the United States; that he graduated from high school in the United States; and that Plaintiff became a naturalized United States citizen in 2002.

In April 2008, a full time police officer position became available in the City of Country Club Hills. Chief Ware recommended that Officer Jimmy Qualls fill this position. Officer Qualls was a part time officer who was hired one month after Plaintiff. Defendant contends, and Plaintiff denies, that Chief Ware recommended Officer Qualls because he believed Officer Qualls was a more experienced police officer than Plaintiff, because of an alleged performance issue with Plaintiff, and because Chief Ware thought Plaintiff was unable to work midnights.

Chief Ware granted Plaintiff's requests to go to Jordan from May 10, 2008, to June 10, 2008, and from July 29, 2008, to September 4, 2008. No one from Country Club Hills gave Plaintiff "a hard time" about his going to Jordan in May 2008 or July 2008. Pl. Dep. at 244-45. In October 2008, Chief Ware learned that there would be another full time police officer position in the City of Country Club Hills. Defendant contends, and Plaintiff denies, that Chief Ware made the decision to exclude Plaintiff from consideration for the opening based on concerns of his availability to work all necessary shifts and based on Plaintiff's performance. Defendant hired Laquitta Cleveland, an officer from outside the City of Country Club Hills Police Department, to fill this second full time position. Defendant contends, and Plaintiff denies, that Officer Cleveland had more police experience than

Plaintiff. Defendant passed over two other part time police officers, other than Plaintiff, for the full time position. The national origin of the two other part-time police officers is "United States." Officer Cleveland graduated from police training in April 2005 and, thus, had over six years of police experience prior to being hired by Defendant.

Defendant contends that there was a citizen complaint against Plaintiff, on approximately March 1, 2008. Captain Adler detailed the substance of this alleged complaint in a memo to Chief Ware, dated March 1, 2008. Def. Ex. B. This memo stated, among other things: "After the meeting with P.O. Othman, [during which Captain Adler discussed the complaint with Plaintiff] Lt. Spencer and I also discussed other issues with P.O. Othman, which we both have noticed, and it is strongly suggested that P.O. Othman be closely monitored as red flags are starting to emerge." Def. Ex. B at 3. Plaintiff does not dispute that there was a citizen complaint but contends that the matter was not pursued.

Plaintiff contends that, *after Plaintiff returned from Jordan*, Captain Adler asked Plaintiff if he was sending money to Jordan and whether he knew Bin Laden.[2] Othman Dep. at 130. Plaintiff also testified in his deposition that Captain Adler would come over to him and say things like, "Do you know Osama Bin Laden? Do you know where he's at, I would go and get him. I tell you that." Plaintiff testified that not every comment Captain Adler made to him was about his being from Jordan. In this regard Plaintiff testified that Captain Adler told him "[t]hat's not the way" or "[t]hat's not how we do it in the U.S." Othman Dep. at 130-31. Plaintiff said that Captain Adler made these latter comments four to six times. Othman Dep. at 132. Kevin Burgdorf, an Officer from Country Club Hills, stated in an affidavit that, when Plaintiff told him about statements which Captain Adler

---

[2] It is not clear whether Plaintiff contends that Captain Adler made these remarks after he returned from his first or from his second trip to Jordan.

5

allegedly made, he suggested that Plaintiff contact Chief Ware about Captain Adler's conduct. Officer Burgdorf also stated that Captain Adler commented to him that Plaintiff was part of "Jihad" and that he was "probably working for them in the Middle East." Officer Burgdorf further stated that he informed Chief Ware of Captain Adler's comments. Burgdorf Aff. at 4. Plaintiff complained to Chief Ware about Captain Adler's treatment of Plaintiff. Plaintiff testified in his deposition that he did this twice. The second time was in September 2008. In particular, Plaintiff testified in his deposition that:

> I just explained to [Chief Ware] that Capt. Adler has been treating me different than the way he's been treating everybody else, and I told him that I've talked to him before about it, and I've told him that he's still making comments that makes me uncomfortable and he's making my job harder to do because he's picking on every single thing I do and how I do it and stuff like that. I just explained myself to him. I can't remember exactly how the conversation went, but I know I've talked to him about the problem again.
>
> ...
>
> [] I told him - - I talked to him about the way he was yelling at me, screaming at me, not liking everything I do and how I do it, how he's always going after me, trying to catch things that I do, and always look at my work and trying to find something wrong with it.

Othman Dep. at 136.

Plaintiff testified in his deposition that Chief Ware told Plaintiff that he would talk to Captain Adler about Plaintiff's complaints; however, he did not know if Chief Ware spoke to Captain Adler. Othman Dep. at 135. Defendant asserts that Chief Ware never told Captain Adler that Plaintiff complained about Captain Adler. Chief Ware testified in his deposition that Captain Adler had a role in the hiring of officers; that he provided background investigations and recommendations to Chief Ware regarding hiring of officers; that Chief Ware would usually go along with Captain Adler's recommendations for the hiring of officers; that Captain Adler had a role in disciplining officers; and

6

that Chief Ware usually went along with Captain Adler's recommendations in regard to discipline of officers. Ware Dep. at 47-48.

Plaintiff resigned from his part time position with Defendant on January 15, 2009. He subsequently obtained full time employment with the City of Pine Lawn. Plaintiff did not turn in the badge and identification card issued to him by Defendant immediately upon his resignation. Plaintiff contends, and Defendant denies, that Chief Ware told Plaintiff that he should keep them and wait for Chief Ware to call Plaintiff to come back and turn them in. Chief Ware called the City of Pine Lawn regarding Plaintiff's failure to turn in his badge and I.D. card several weeks after Plaintiff left his job with Defendant. Chief Ware states that he left at least one message for Plaintiff asking him to return his badge and I.D. card prior to Chief Ware's calling the City of Pine Lawn. Ware Aff., ¶ 52. Defendant contends that the call was placed for the purpose of asking Plaintiff to return his badge and identification car. Plaintiff contends, and Defendant denies, that the call to the City of Pine Lawn was placed for the purpose of complaining about Plaintiff. Plaintiff does not contend that Chief Ware discussed any topics other than Plaintiff's badge and I.D. card when he called the City of Pine Lawn.

Plaintiff testified in his deposition that he and Chief Ware "were really sweet in the beginning"; that he believed that Chief Ware turned against him based on the fact that, after Plaintiff complained about Captain Adler's statements, there was no change in Captain Adler's behavior. Othman Dep. at 217. When asked if there was anything else Chief Ware did to indicate that he turned against Plaintiff, Plaintiff testified that:

> Well, he told me that I can work in a drug unit, and then he tell me – then he told me just I have to go by what Capt. Adler's saying. Then Capt. Adler did not want me to, and every time he didn't want me to go and work, Capt. Adler got in the middle and said, "No, you can't." But I have nothing really against Chief Ware you know, his personality. I have a problem with him as far as the full-time position, but I don't have a problem with him personally.

Othman Dep. at 217-18.

7

Plaintiff continued to testify that Chief Ware did not "yell at [him] or anything"; that he did not treat Plaintiff with disrespect; and that he did not make comments to Plaintiff about his being from Jordan. Othman Dep. at 218. Plaintiff specifically testified that Chief Ware "never told [him] anything about [his] national origin. ... He never - - He's not like - - I don't think he's that type of guy." Othman Dep. at 220.

Plaintiff filed a charge with the EEOC on approximately January 23, 2009. By letter dated January 23, 2009, the EEOC informed Defendant that Plaintiff had filed this charge. Def. Ex. C.

## IV.
## LEGAL FRAMEWORK and DISCUSSION

**A.    Title VII - Failure to Hire:**

In Count I, Plaintiff alleges that Defendant failed to hire him for either of two available full time police officer positions based on Plaintiff's nationality. Plaintiff's claim of a failure to hire based on his national origin is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009); McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir. 1998); Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).

Under the McDonnell Douglas framework, Plaintiff has the initial burden of establishing a prima facie case of race discrimination. He must demonstrate the following elements to establish a prima facie case: (1) that he is a member of a protected class; (2) that he was qualified for the position for which he applied; and (3) he was rejected while other persons similarly qualified were hired. Easley v. Anheuser-Busch, Inc., 758 F.2d 251, 256 (8th Cir. 1985).

The court will assume, arguendo, that Plaintiff is a member of a protected class as his national origin is Jordanian. Additionally, the undisputed facts establish that Chief Ware was aware of Plaintiff's national origin. To establish a prima facie case, Plaintiff must further establish that he was

qualified for the full time position; that despite his qualification, Plaintiff was not hired; and that the persons hired were no more qualified than he was. Rose-Maston, 133 F.3d at 1108. For purposes of summary judgment the court will assume that Plaintiff was qualified for the full time officer positions; that Officers Qualls and Cleveland were no more qualified than Plaintiff; that Captain Adler made derogatory statements about Plaintiff's national origin to Plaintiff; and that Plaintiff told Chief Ware that he *preferred not to work* the midnight shift, not that he *could not work* the midnight shift.

Assuming, arguendo, that Plaintiff presented a prima facie case of race discrimination, a rebuttable presumption of discrimination is created. Pursuant to a McDonnell Douglas analysis, the burden then shifts to Defendant to rebut this presumption by articulating one or more nondiscriminatory reasons for the employment decision. In regard to Defendant's burden, the Eighth Circuit holds:

> The burden is not onerous, and the explanation need not be demonstrated by a preponderance. The defendant need not persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. If the defendant offers a facially nondiscriminatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates.

McCullough, 140 F.3d at 1127 (quoting Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 150 (8th Cir. 1997)). At this point in the court's analysis, the court is limited to determining whether the employer gave a nondiscriminatory explanation for its actions, rather than to weigh the wisdom of any particular employment decision. Thomas v. Runyon, 108 F.3d 957, 960 (8th Cir. 1997).

Plaintiff does not dispute that there was a citizen complaint soon after he was hired; he merely suggests that there was never a formal process initiated regarding this complaint. Further, at the very

9

least, Plaintiff admits that he preferred not to work midnights due to his gas station business. As such, Defendant has submitted legitimate nondiscriminatory reasons for choosing not to hire Plaintiff.

Under such circumstances, the burden shifts back to Plaintiff. In particular, pursuant to a McDonnell Douglas burden shifting analysis, Plaintiff first must present evidence which creates a fact issue as to whether Defendant's proffered reasons are mere pretext. Qamhiyah v. Iowa State Univ. of Science and Tech., 566 F.3d 733, 745 (8th Cir. 2009). Second, Plaintiff must present evidence which creates a reasonable inference that decision not to hire him was an act of intentional discrimination. Id.; Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996). The question at this stage, then, is whether Plaintiff has produced sufficient evidence to support a reasonable inference that Defendant's proffered reasons are merely a pretext for national origin discrimination. As explained by the Eighth Circuit:

> [A] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [national origon] was a determinative factor in the adverse employment decision. The second part of the test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffice[s] to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [national origin].

Rothmeier, 85 F.3d at 1336-37 (citations omitted).

It is undisputed that Chief Ware was the primary decision maker regarding the hiring of the two full time officer positions at issue and that Chief Ware was aware of Plaintiff's national origin at the time he recommended Plaintiff be hired. As stated by the Eighth Circuit, "'it is unlikely that a person would hire a minority and then ... decide to fire that same person based on [] the minority status.'" Takele, 576 F.3d at 839 (quoting Calvin v. Yellow Freight Sys., Inc., 218 F.3d 904, 906-07

(8th Cir. 2000)). As discussed above, Plaintiff acknowledges that Chief Ware is not the kind of person who would discriminate against him because of his national origin.

Most significantly, in regard to the April 2008 full time officer position, although Plaintiff does not suggest a specific date upon which Captain Adler allegedly first made comments regarding his national origin, Plaintiff contends that these statements were made after he returned from Jordan. Plaintiff's first trip to Jordan was not until May 10, 2008, through June 10, 2008, which means that Captain Adler's comments could have had nothing to do with Officer Qualls appointment to the first available full time position. As found above, Defendant has provided a nondiscriminatory explanation for not hiring Plaintiff for the April 2008 position. See Thomas, 108 F.3d at 960. Plaintiff has not proffered evidence which creates a reasonable inference that Defendant's decision not to hire him for the April 2008 position was an act of intentional discrimination. See Qamhiyah, 566 F.3d at 745; Rothmeier, 85 F.3d at 1336-37. Further, the court finds that there are no facts in dispute which would affect the outcome of Plaintiff's claim that Defendant discriminated against him in violation of Title VII by not hiring him for the April 2008 full time officer position. See Anderson, 477 U.S. at 248. As such, the court finds that Defendant has met its burden on summary judgment to show that there are no genuine issues of material fact regarding the April 2008 position and that Defendant is entitled to judgment as a matter of law on this issue. See Fed. R. Civ. P. 56; Celotex, 477 U.S. at 322. The court finds, therefore, to the extent Defendant seeks summary judgment in regard to Plaintiff's claim of unlawful discrimination in regard to his not being hired for the April 8, 2008 full time officer position, that Defendant's Motion for Summary Judgment should be granted.

In regard to Plaintiff's not being appointed to the October 2008 position, while the alleged statements Captain Adler made to Plaintiff regarding his national origin were made prior to Plaintiff's not being hired for this position, these statements, taken in context, are *ambiguous*. See Arraleh v.

11

County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) ("As for Brady's comment to Arraleh that 'black people are expected to leave their blackness behind, ... [a]t most, the comment is an ambiguous statement by a decisionmaker unrelated to the decisional process."). At most, Captain Alder's alleged statements are unwelcome statements made by a non-decision maker. See id. While Captain Adler may have had some input into the decision not to hire Plaintiff, Chief Ware was the ultimate decision maker. Moreover, Plaintiff has failed to show any link between Captain Adler's alleged statements and Plaintiff's not being hired for the October 2008 position. See id. Indeed, Plaintiff has presented no evidence that Chief Ware, who was the primary decision maker, did not appoint him to the position based on his national origin. Thus, to the extent Captain Adler had any input into the hiring process, Plaintiff testified in his deposition that Chief Ware is not the kind of person who would not hire him because of his national origin.

Pursuant to a McDonnell Douglas analysis, Plaintiff has presented no direct evidence that he was not hired for the October 2008 position based on his national origin. Defendant has articulated one or more legitimate nondiscriminatory reasons for not hiring Plaintiff for this position. Although Plaintiff may present evidence to suggest that Defendant's proffered reasons were not the real reasons he was not hired for the October 2008 position, the court has rejected, above, arguments made by Plaintiff in this regard, including Captain Adler's alleged statements. Plaintiff has not proffered evidence which creates a reasonable inference that Defendant's decision not to hire him for the October 2008 position was an act of intentional discrimination. See Qamhiyah, 566 F.3d at 745; Rothmeier, 85 F.3d at 1336-37. Further, the court finds that there are no facts in dispute which would affect the outcome of Plaintiff's claim that Defendant discriminated against him in violation of Title VII by not hiring him for the October 2008 full time officer position. See Anderson, 477 U.S. at 248. As such, the court finds that Defendant has met its burden on summary judgment to show

that there are no genuine issues of material fact regarding the October 2008 position and that Defendant is entitled to summary judgment on this issue. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322.

In conclusion, the court finds that Plaintiff has not shown any admissible evidence from which a rational trier of fact could find that Defendant's proffered nondiscriminatory reasons for not hiring Plaintiff for either the April or the October 2008 full time officer positions are either untrue or were not the real reasons for this decision *and* that intentional discrimination was the real reason. See McCullough, 140 F.3d at 1127; Hill, 123 F.3d at 1119. As such, the court finds that summary judgment should be granted in Defendant's favor in regard to Plaintiff's allegations, in Count I, that Defendant failed to hire him for these positions based on his national origin.

**B.     Title VII - Retaliation:**

Plaintiff alleges, in Count II, that Defendant retaliated against him, in violation of Title VII, for complaining "that he was being treated unfairly and denied being hired as a full time police officer because of his national origin." Compl., ¶ ¶ 31, 36. Plaintiff further contends, in Count II, that Defendant retaliated against him: (1) for complaining that he was denied a promotion because of his national origin, and (2) for filing a charge of discrimination. Compl., ¶ 33. Plaintiff does not allege the form that the "charge of discrimination" took, but his deposition he testified that the complaints addressed in Count II are those which he made to Chief Ware about Captain Adler's conduct. Othman Dep. at 206-207. Likewise, Count II does not allege the form that the retaliation took although Plaintiff does allege, in Count II, that as a result of Defendant's retaliation he suffered, among other things, lost wages, insurance, retirement benefits, vacation pay, severance pay, and other benefits incident to employment. Comp. ¶ 36. In his deposition Plaintiff testified that, after he spoke

13

to Chief Ware about Captain Adler's conduct, he felt that Captain Adler over scrutinized his work and treated him more harshly.[3]

In Count III, Plaintiff alleges post employment retaliation in violation of Title VII, in that Defendant's representatives and supervisors called Plaintiff's new employer, the City of Pine Lawn, and spoke poorly of him.

As a preliminary matter, Title VII requires a plaintiff to exhaust his administrative remedies by filing a Charge of Discrimination with the EEOC. See Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir.1996) (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir.1994)); Stuart v. Gen. Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) ("It is generally recognized that '[e]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'"). "Before the federal courts may hear a discrimination claim, an employee must fully exhaust [his] administrative remedies." Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir.2003); "Administrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir.2002). "Because persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII." Cobb v. Stringer, 850 F.2d 356, 359 (8th

---

[3] During his deposition Plaintiff was asked to describe the conduct he alleged was retaliatory, Plaintiff testified that after he complained to Chief Ware, Captain Adler "became more aggressive"; that it became "worse and worse every week." Othman Dep. at 205-206. Plaintiff further testified that he believed he was denied a full time position because he complained about Captain Adler. In particular, Plaintiff testified that, "[b]ecause if this man know[s] I'm complaining about him, do you think he's going to give me promotion or help me out?" Othman Dep. at 208. When asked if he had any evidence that the reason he was not given the full time position was because he complained to Chief Ware about Captain Adler, Plaintiff testified that his "evidence is what's been happening. ... the way they treated me." Othman Dep. at 208-209.

Cir.1988). "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC investigation 'which could reasonably be expected to grow out of the charge of discrimination.'" Id. (quoting Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir.1985)). The Eighth Circuit has further explained:

> We do not require that subsequently-filed lawsuits mirror the administrative charges. See Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886 (8th Cir.1998) ("A Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, but the scope of the subsequent action is not necessarily limited to the specific allegations in the charge."). However, "the sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir.1988) (quoting Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir.1985)). "Allegations outside the scope of the EEOC charge ... circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir.2000); accord Watson v. O'Neill, 365 F.3d 609, 614 (8th Cir.2004) ("As in Williams, Watson's failure to make an assertion of retaliatory motive in relation to his non-selection as a Building Manager Specialist is fatal to his attempt to resurrect the issue."); Williams, 21 F.3d at 223 ("'Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" (quoting Babrocky v. Jewel Food Co. & Retail Meatcutters, 773 F.2d 857, 863 (7th Cir.1985))).

Duncan v. Delta Consol. Indus., 371 F.3d 1020, 1024 (8th Cir. 2004).

In Plaintiff's case, the charge which he filed with the EEOC did not allege retaliation. The box marked "discrimination" is checked and the box marked "retaliation" is not checked. Def. Ex C. The Eighth Circuit has specifically held that a failure to "check the box next to 'Retaliation' on the [EEOC] complaint form" and the failure to allege "any facts in the complaint form connecting his termination with his alleged complaint about the [ethnic] slurs," establishes that complainant has not exhausted his administrative remedies as required by Title VII. Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004). The court finds, therefore, that summary judgment should be

granted in Defendant's favor in regard to Counts II and III, based on Plaintiff's failure to exhaust his administrative remedies.

Alternatively, the court will consider the substantive merits of Count II. In order to establish a prim a facie case of retaliation, Plaintiff must show that: (1) he engaged in conduct protected by Title VII; (2) Defendant engaged in or took a material adverse action against him; and (3) a causal connection existed between Plaintiff's conduct and the adverse action. Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006); Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006). At all times, a plaintiff retains the ultimate burden of persuasion to show the adverse employment action was a result of intentional, unlawful discrimination. See Kobrin v. University of Minnesota, 121 F.3d 408, 413-14 (8th Cir. 1997); Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996). Therefore, to succeed against a motion for summary judgment, a plaintiff must present sufficient evidence of intentional discrimination by his employer to create a genuine issue of fact for trial. See Rothmeier, 85 F.3d at 1337.

First, to the extent Plaintiff testified in his deposition that Captain Adler treated Plaintiff differently after Plaintiff complained to Chief Ware, Plaintiff did not make such an allegation in his Complaint before this court. As such, the court need not address Plaintiff's testimony in this regard.

Second, to the extent Plaintiff's Complaint suggests that the employment retaliation, which he alleges violates Title VII, relates to his not being hired for the full time positions, the court has found above that Plaintiff has not presented sufficient evidence to create an inference that the decision not to hire him for either full time position was an act of intentional discrimination; that Plaintiff has not presented sufficient evidence to support a reasonable inference that Defendant's proffered reason for not hiring Plaintiff was a pretext; and that Defendant has provided a nondiscriminatory reason for not hiring Plaintiff. Plaintiff has suggested no evidence to establish a nexus between Plaintiff's

complaining to Chief Ware and his not being hired for either full time position. As such, Plaintiff cannot establish a causal connection between his complaining to Chief Ware and his not being hired for either the April 2008 or the October 2008 full time officer position. Moreover, to the extent that Plaintiff suggests that he was not hired for the April 2008 full time position in retaliation for his complaining to Chief Ware, as set forth above, Plaintiff did not complain to Chief Ware until after Plaintiff returned from Jordan, which date was well after Officer Qualls was appointed to the April 2008 position. See Burlington, 548 U.S. at 68; Robinson, 453 F.3d at 994. Plaintiff has not presented evidence which creates a reasonable inference that decision not to hire him was an act of intentional retaliation for his complaining about Captain Adler's conduct to Chief Ware. See Rothmeier, 85 F.3d at 1336-37. The court finds, therefore, that summary judgment should be granted in Defendant's favor in regard to Plaintiff's claim, in Count II, that Defendant retaliated against him for complaining to Chief Ware by not hiring Plaintiff for the April 2008 or the October 2008 position.

The court will next consider Plaintiff's allegation of post employment retaliation in Count III. Chief Ware's making a telephone call to the Chief of Police of Pine Lawn and telling him that Plaintiff had failed to turn in his badge and I.D. card does not rise to the level of a materially adverse employment action as it could not be expected to produce harm to Plaintiff and was no more than "trivial." Littleton v. Pilot Travel Centers, 568 F.3d 641, 644 (8th Cir. 2009) ("[T]o be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.'") (quoting Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 917 (8th Cir.2007)). In particular, the Eighth Circuit has held that "commencing performance evaluations, or sending a critical letter that threatened 'appropriate disciplinary action,' or falsely reporting poor performance ... were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee." Id. (citing Weger v. City of Ladue, 500 F.3d 710, 727 (8th Cir.2007); Gilbert, 495 F.3d

17

at 917; Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 786 (8th Cir. 2007); Higgins v. Gonzales, 481 F.3d 578, 590 (8th Cir. 2007)). Chief Ware's calling the City of Pine Lawn did not have a "materially adverse" impact on Plaintiff; Plaintiff does not suggest any action that was taken against him by the City of Pine Lawn as a result of Chief Ware's call. Burlington, 548 U.S. at 68. Id. at 68 (quoting Rochon, 438 F.3d at 1219 (internal quotations omitted). The court finds, therefore, that summary judgment should be granted in Defendant's favor in regard to Plaintiff's allegation of post employment discrimination in Count III.

## V.
## CONCLUSION

For the reasons articulated above, the court finds that Defendant's Motion to Strike the Affidavit of Kevin Burgdorf should be denied, in part, and granted, in part. The court further finds that the undisputed facts establish that Defendant did not discriminate or retaliate against Plaintiff because of his national origin or because of his complaining about Captain Adler's conduct, either while Plaintiff was employed by Defendant or while Plaintiff was employed by the City of Pine Lawn. As such, the court finds that Defendant's Motion for Summary Judgment should be granted in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** Defendant's Motion to Strike the Affidavit of Kevin Burgdorf is **DENIED,** in part, and **GRANTED,** in part; Doc. 32

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant is **GRANTED**; Doc. 16

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler  
MARY ANN L. MEDLER  
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of December, 2010.